LUDWIKA PAJAK *vs.* CHICOPEE MANUFACTURING CORPORATION.

PAWEL BODUCH & another *vs.* SAME.

JOHN WIATER & another *vs.* SAME.

Hampden.   September 20, 1923. — October 13, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & CARROLL, JJ.

*Evidence*, Presumptions and burden of proof.   *Mill Act.*   *Damages*, In proceedings under mill act.

Where, at the trial of a petition under G. L. c. 253, § 4, by the owner of land on a stream above the respondent's milldam, there was evidence tending to show that the respondent during the years 1918, 1919 and 1920 had maintained flashboards which would raise the water of the stream above the level at which he had a right to maintain it and that therefore damage had resulted and in the future would result to the petitioner by reason of water being set back on his land to an extent that it would not have been

set back, had the rightful level not been exceeded, and such evidence amounts to more than a scintilla, questions of fact were raised which properly were submitted to the jury.

THREE PETITIONS, filed in the Superior Court on December 13, 1920, under R. L. c. 196, § 4, now G. L. c. 253, § 4, by owners of land upon which the waters of the Chicopee River were alleged to have been caused to be set back unwarrantably by the maintenance by the respondent of a dam and flashboards at an unlawful height. The prayers of the petitions were that the respondent " be ordered to remove the said flashboards and to lower the said dam or that the court will, with a jury, fix the height at which it may be maintained in the future, and award such damages therefor, either in gross or annually as to the court seems reasonable."

In the Superior Court, the petitions were tried before *Lummus,* J. By agreement of the parties, " no issue was raised that would entitle the respondent under G. L. c. 253, § 6, to have any question tried preliminary to the submission of the cases to a jury to assess damages, but the cases were submitted to a jury to assess damages, it being agreed, however, that upon the assessment of damages the time and extent of flowage should be open.

" It was agreed that the respondent, at all times covered by the petition, and to the date of the verdict, had the right by grant to maintain the permanent structure of its dam to the height at which it had been maintained prior to 1917, together with a flashboard or flashboards thereon of a total height of fourteen inches above the permanent structure of the dam as it had existed prior to 1917.

" It further appeared that about September, 1920, a new gate house at the entrance to the canal on the southerly side of the river was constructed, and that in connection with this construction for about thirty feet along the dam adjacent to the gate house the permanent structure was raised fourteen inches above its former level, namely, to a height even with the top of the fourteen inch flashboards which were permitted to be maintained along the rest of the dam. The jury took a view of the lands alleged to have been flowed, the respondent's dam, and the Chicopee River."

It appeared that the petitioners Boduch sold their land in April, 1922, before the trial.

Other material evidence is described in the opinion.

At the close of the evidence, the respondent moved in the Boduch case that the jury be ordered to return a verdict for the respondent on the issues of (a) damages sustained to the date of the verdict, (b) annual compensation for future damages for maintenance of twenty-two inch flashboards, and (c) gross compensation for future damages for maintenance of twenty-two inch flashboards. In the Pajak and Wiater cases the respondent moved that the jury be ordered to return a verdict for the petitioners for nominal damages only on the same three issues. The motions were denied.

The respondent then asked for the following rulings:

" 8. On all the evidence the petitioner Boduch is not entitled to recover.

" 9. On all the evidence the verdict in the Wiater case must be for nominal damages only.

" 10. On all the evidence the verdict in the Pajak case must be for nominal damages only."

" 15. There is no sufficient evidence upon which the jury can find the amount of damage sustained by the plaintiffs due to the difference in flowage between a twenty-two inch flashboard and a fourteen inch flashboard, and the verdict in each case, accordingly, must be for nominal damages only."

The requests were denied.

In the Pajak case the jury found as follows:

" (1) The respondent having the right by grant to maintain without making compensation the permanent structure of its dam up to the height at which it had been maintained prior to the year 1917, together with a flashboard thereon fourteen inches high,

" The jury assesses the amount of damages sustained by the petitioner within three years last preceding the filing of the petition and to the date of this verdict, by reason of the raising of said dam above the height aforesaid, (having taken into consideration any damage caused thereby to other land of the petitioner as well as damage caused thereby

to the land overflowed, and having allowed, by way of set-off, any benefit caused thereby to the petitioner's land) in the amount of $1,385.

" (2) The jury find and determine that the dam shall not be maintained higher than the following height, namely, — for the permanent structure of the dam the height at which said permanent structure is now maintained, and for the flashboard, the height of twenty-two inches above the crest of the permanent structure at the lower of the two levels of such permanent structure.

" (3) The jury find and determine that the amount which, paid annually to the petitioner, would be a just and reasonable compensation for the damages that may be hereafter caused by the dam, so long as it is used in conformity with this verdict, is the amount of $250.

" (4) The jury find and determine that the amount in gross which would be a just and reasonable compensation for all damages hereafter to be caused by the use of the dam in conformity with this verdict and for the right to maintain it forever in conformity with this verdict is the amount of $2,500."

In the Boduch case the judge instructed the jury that, as the petitioners conveyed their land in the spring of 1922, they had a right to have their damages assessed up to the time of such conveyance, but had no right to have damages assessed for any period after such conveyance. The first item of the verdict in the Boduch case was in the same form as the first item in the Pajak verdict, but the amount found by the jury was $331.58. The second item of the verdict was the same as the second item in the Pajak verdict.

In the Wiater case, items 1, 3 and 4 of the verdict were in the same form as the corresponding items of the verdict in the Pajak case. The amount found under item 1 was $553.50. The amount found under item 3 was $175. The amount found under item 4 was $1,750. Item 2 of the verdict was the same both in form and substance as in the Pajak case.

The respondent alleged exceptions.

*B. E. Eames*, for the respondent.

*D. H. Keedy,* (*E. S. Searle* with him,) for the petitioners.

CARROLL, J. These three petitions under the mill act (R. L. c. 196, G. L. c. 253) were tried together. A verdict was returned for the petitioner in each case and the respondent excepted.

The respondent had the right to maintain the permanent structure of its dam on the Chicopee River to the height at which it had been maintained prior to 1917, together with flashboards thereon of a total height of fourteen inches above the permanent structure of the dam, as it had existed before 1917. In September, 1920, a new gate house was built and the permanent structure for about thirty feet " along the dam adjacent to the gate-house . . . was raised fourteen inches above its former level." The respondent admitted. that during the years 1919 and 1920 it maintained flashboards twenty-two inches above the lower level of the permanent structure.

There was evidence that in the years 1915 and 1916 twenty-two inch flashboards were maintained. There also was evidence tending to show that prior to 1918 the flashboards were not higher than fourteen inches; that in 1918, 1919 and 1920 flashboards from twenty-two to twenty-six inches above the permanent dam were maintained. The jury viewed the respondent's dam and the lands alleged to have been flowed. There was evidence for the jury of the damage done to the petitioners' properties from the flowage arising from the increase in the extent of the flashboards. If the jury believed the witnesses for the petitioners, they could find that when the fourteen inch flashboards were maintained the land was not flooded; that in 1918, 1919 and 1920 when the flashboards were from twenty-two to twenty-six inches in height the petitioners' real estate was flooded and damage done to their crops. The respondent's testimony was to the effect that the flashboards in 1917 and 1918 were only fourteen inches; that in 1919 and 1920 they were not higher than twenty-two inches, and with the larger flashboards the water could not flood the petitioners' real estate. Without reciting all the evidence supporting these claims of the petitioners and (of) the respondent, the ques-

tions were of fact for the jury; and there was no error of law in refusing the respondent's requests.

On all the evidence the jury could find that the flowage of the land in 1918, 1919 and 1920 was caused, not by excessive rainfall, but by the backwater from the river, and that there was a causal connection between the raising of the flashboards and the flooding of the land. There was more than a mere scintilla of evidence in support of the petitioners' contention. However probable the evidence of the respondent may appear, we cannot disturb the findings of the jury.

All the questions raised by the exceptions were properly left to the jury to decide, and, as no error of law is shown the exceptions must be overruled in each case.

*So ordered.*